UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| THOMAS ALOIA | : | |
| Debtor | : | Bankruptcy No. 12-18009bf |

| | | |
|---|---|---|
| 421 CHESTNUT PARTNERS, LP AND DIAMOND TOOL & FASTENERS, INC. | : | |
| Plaintiffs | : | |
| v. | : | |
| THOMAS ALOIA | : | |
| Defendant | : | Adversary No. 13-0106 |

...................................................

MEMORANDUM OPINION

...................................................

Two related matters are currently before me.  First, the debtor/defendant has moved to dismiss as untimely filed the above-captioned adversary proceeding, which, inter alia, objects to the debtor's chapter 7 discharge.[1]  Thereafter, the plaintiffs filed in the underlying bankruptcy case a motion under Federal Rule of Bankruptcy Procedure 4004(b)(2) to extend the time to file a complaint objecting to discharge.  As the two motions are interconnected, a joint hearing was held and evidence relevant to the Rule 4004(b)(2) motion was presented.  Only the debtor has opted to submit a posthearing memorandum, and these two motions are now ripe for determination.

---

[1]As will be mentioned infra, Counts I and II, raising issues of nondischargeability, have already been dismissed.  Count III, an objection to the debtor's discharge, is the only remaining cause of action in this proceeding.

I.

The facts relevant to these disputes, including their procedural history, are
as follows.[2]

The debtor, Thomas Aloia, filed a voluntary petition in bankruptcy under
chapter 7 on August 24, 2012.  In accordance with Bankruptcy Rule 2003(a), the first
meeting of creditors under section 341(a) was set for October 3, 2012.  By virtue of
Bankruptcy Rules 4004(a) and 4007(c) the deadlines to object to the debtor's discharge or
to challenge dischargeability of certain debts under section 523(c) were fixed at 60 days
from the first date set for the meeting of creditors, or December 2, 2012.  See docket entry
#9.  Due notice of these deadlines was sent to creditors as required by Bankruptcy Rule
2002.

On his Bankruptcy Schedule B (Personal Property) filed with his voluntary
petition, Mr. Aloia disclosed, inter alia, his ownership of 100 percent of the stock of Aloia
Construction, Inc.  He further stated that this corporation was formed on January 7, 2002
and ceased operation on May 9, 2009.  Mr. Aloia's Bankruptcy Schedule B also reported
that this corporation had the following five "current . . . collection cases":

Aloia vs. 421 Chestnut Partners, LP
Aloia vs. Byrne Limited Partnership

---

[2]I take judicial notice, under Federal Rule of Evidence 201 (incorporated into
bankruptcy cases and proceedings by Federal Rule of Bankruptcy Procedure 9017), of the docket
entries and documents attached to those entries, such as the debtor's bankruptcy schedules,
pleadings and orders entered in this case.  See Maritime Elec. Co., Inc. v. United Jersey Bank,
959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993);
In re Paolino, 1991 WL 284107, at *12 n.19 (Bankr. E.D. Pa. 1991); see generally In re Indian
Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

Aloia vs. 4742 Condo Associates, Fred Berg and Stephen Fox
Aloia vs. 800 Properties, Fred Berg and Stephen Fox
Aloia vs. Halberstadt Curley

In addition, the debtor valued his interest in the corporate stock as $0.

At the meeting of creditors held on October 3, 2012, the chapter 7 trustee, Terry P. Dershaw, Esquire, examined the debtor. When he asked Mr. Aloia if there were any "errors or omissions" in his bankruptcy schedules, Mr. Aloia referred to his Schedule B and stated "[t]he first three [collection cases] are correct, number four and five are not actual matters or assets of the corporation at this time." Ex. J-1, p. 5.

Counsel for the plaintiffs attended the October 3rd meeting and questioned Mr. Aloia. He asked the debtor: "How did you arrive at [the $0] value [of the corporation]?" The debtor responded: "I think it's at zero dollars at this minute because the only assets it has are the collectability of the cases one, two, and three." Id., p. 12.

Plaintiffs' counsel also asked what changes, if any, regarding receivables four and five no longer made them corporate assets. Mr. Aloia replied

> [in the 800 Properties case], it's just an LLC that does not seem to be any collectability[,] and the Aloia Halberstadt Curley issue was related to a matter that they were handling, which they are still handling. . . . Halberstadt – well, not Halberstadt Curley, but Kevin Watson was an attorney at Halberstadt Curley and had moved to another firm. There was an issue that came up and he ended up leaving the firm and going to a new firm and carrying our cases over to the new firm. . . . The issue was misrepresentation. We felt there will [sic] was a breach in our agreement and Kevin left and took all of our cases with him.

Id., pp. 12-13. Mr. Aloia added that he valued the receivable claims according to whether he believed he could "collect the money owed to us." Ex. J-1, p. 14.

At the October 3rd meeting, plaintiffs' counsel also elicited that Mr. Aloia's wife was paying "most" of the court costs and arbitration fees associated with these corporate collection cases; that the debtor's spouse had filed UCC liens for the money advanced to the corporation, ex. J-1, p. 14; that the amounts claimed by the corporation in the first three collection cases listed on Schedule B were: 421 Chestnut-$363,000, Bern-$1.2 million, and 4742 Condo-$800,000; and, that the liabilities of Aloia Construction were approximately $1.5 million, which Mr. Aloia stated he had guaranteed. Ex. J-1, pp. 14-16.

The chapter 7 trustee thereafter continued the October 3rd creditors meeting to November 13, 2012, requesting additional information from the debtor as follows:

> Debtor to provide 2009 - 2011 tax returns (personal and for each business listed in SOFA #18), bank statements for the period 7/1/11 - date of filing for all financial accounts in which the debtor had any interest or was the signatory of any personal or business account, documentation substantiating each collection case listed in Schedule B. Debtor to provide evidence of sale or transfer of any interest in Abcon Construction Inc. Case to be continued for further examination of debtor. Information Due on: 10/24/2012.

See docket entry 10/09/2012.

Also on October 3rd, the debtor filed an amended Schedule B, deleting the 800 Properties and Halberstadt Curley collection cases from the identified assets of Aloia Construction, and adding a statement that the corporate liabilities exceeded the value of the outstanding corporate "actions."

On October 21, 2013, plaintiffs' counsel, acting on behalf of plaintiff Diamond Tool & Fasteners, Inc. and two other entities, filed an involuntary chapter 7 bankruptcy petition against Aloia Construction Co., Inc. under 11 U.S.C. § 303, docketed

4

as Bankr. No. 12-19889.  On January 8, 2013, counsel for the petitioners filed a

"certification" stating that they did not intend to prosecute the involuntary petition.

Accordingly, the involuntary bankruptcy case against the debtor's corporation was

dismissed.

On November 2, 2012, Mr. Aloia filed a second amendment to his

Bankruptcy Schedule B.  This amendment disclosed the identical information regarding

Aloia Construction, Inc. as had been identified in the original Schedule B, including the

five "collection cases."  Deleted, however, was the statement that corporate liabilities

exceeded the value of corporate actions.  Moreover, instead of valuing his corporate

interest at $0, the debtor listed its value as "unknown."  On November 2nd, the debtor

also filed an amended Bankruptcy Schedule C (Property Claimed as Exempt) listing his

interest in Aloia Construction, Inc. as exempt, pursuant to 11 U.S.C. § 522(d)(5), in an

"unknown" amount and with the asset having an "unknown" value.

The continued meeting of creditors resumed on November 13, 2012.  The

trustee noted in his report of this meeting that he had not received all documents

requested at the earlier October 3rd meeting:

> Trustee investigation continuing.  Debtor to provide balance
> of documents previously requested and outstanding.  Case to
> be continued for status, however, all parties are cautioned to
> check with trustee prior to scheduled continued meeting to
> determine if meeting will proceed.  Information Due on:
> 11/20/2012.

See docket entry 11/13/2012.  The trustee continued the meeting of creditors to

November 28, 2012.

At the November 13th meeting, plaintiffs' counsel again examined Mr.

Aloia.  One of the topics he raised concerned the debtor's two amendments to Bankruptcy

Schedule B.  Ex. J-2, p.16.  The following exchange took place:

Q. So are those cases moving forward, all five of them?

A. The 800 properties is now, is moving forward, and the
(indistinguishable) I have not talked to counsel for my issue.

Q. What is the issue in that case?

A. I don't even know if it's a legal issue so I really can't
expand upon it until I speak to counsel.

Q. What's the basis of the claim?

A. The basis of the claim is on procedural.

Q. I'm not sure I understand what that is.

A. It's a procedure that was missed on – without counsel
advising me I'm not sure if I have a legal basis to pursue an
action.

Q. So it's a potential malpractice claim?

A. It's potentially, but I don't really want to speak out of turn
without speaking to counsel first.

Q. What was the underlying case where this procedural issue
arose?

A. It was on a, one of the construction matters with Century
Construction.

Q. Century Construction.  And is that in litigation or was it in
litigation?

A. It was.

Q. And what happened?

A. It was dismissed.

Q. And it's your contention or your belief that there's a potential claim against them for it having been dismissed?

A. I don't know at this point.

Q. Okay.  What was the second case which was taken off and then re-added?

A. The 800 properties which I spoke about earlier.

Q. And what is that case about?

A. Nonpayment.

Q. Nonpayment of company – of an obligation to the company, is that what you're suggesting?

A. Yes.

Ex. J-2, pp. 17-18.

Mr. Aloia also then testified that he did not know the total liabilities of Aloia Construction.  He added: "I'm sure there's some sort of general account" reflecting corporate income and expenses.  Ex. J-2, pp. 37-38.

Apparently finally satisfied with Mr. Aloia's document production, but still needing time to review the documents produced, the trustee did not hold a meeting of creditors on November 28, 2012; rather, he and Mr. Aloia entered into a stipulation, granted by this court on November 28, 2012, extending to February 4, 2013 the deadline under Rule 4004(a) for the chapter 7 trustee and the U.S. Trustee to object to the debtor's discharge, and the deadline under Rule 1017(e) for the U.S. Trustee to move for dismissal or conversion.  See docket entry #85.

On December 3, 2013, the two plaintiffs herein, Diamond Tool and Fasteners, Inc., and 421 Chestnut Associates, L.P., filed a joint motion under Bankruptcy Rule 4004(b)(1) to extend the deadlines for objecting to the debtor's bankruptcy

discharge or asserting the nondischargeability of their claims until February 4, 2013.  The

plaintiffs alleged that they had not had the opportunity to review the documents the debtor

had provided to the trustee.  In addition, they averred:

> Movants hold certain unsecured claims against Debtor and/or
> Aloia Construction Company, Inc., and are investigating the
> facts and circumstances of the Debtor's self-dealing and
> commingling of corporate and individual funds.  Debtor's
> actions might very well lead to an action seeking that Debtor
> be found individually liable to movant [sic] and such liability
> be held non-dischargeable under 11 U.S.C. § 523.  Likewise,
> certain information has come to light in the two initial
> sessions of the Meeting of Creditors which might support an
> action that the Debtor is not entitled to a discharge.

See docket entry #87 (Motion to Extend Deadlines, ¶ 14).

For reasons given in an accompanying statement, this court granted the

plaintiffs' joint motion over the debtor's opposition by order dated January 14, 2013.  See

docket entries ##120-21.[3]  Thus, the plaintiffs had until February 4, 2013 to object to the

debtor's chapter 7 discharge or to assert nondischargeability claims under section 523(c).

On January 29, 2013, the chapter 7 trustee filed a report concluding the

meeting of creditors.  Thereafter, neither he nor the United States trustee filed an

objection to discharge or a motion to dismiss this case by the February 4th deadline;

however, on February 11, 2013, the chapter 7 trustee filed a notice that this chapter 7 case

would be treated as one with non-exempt assets to distribute, and requested that the clerk

---

[3]One of the debtor's objections to the joint motion was that it had been filed one
day late.  As noted earlier, deadlines under Rules 4004(a) and 4007(c) are 60 days from the first
date set for the meeting of creditors.  That meeting was fixed for October 3rd; 60 days later is
December 2nd.  However, as December 2nd fell on a Sunday, Rule 9006(a)(1)(C) established
Monday, December 3, 2012, as the filing deadline.  Therefore, the motion was timely filed.

give notice to creditors of a claims bar date.  See Bankruptcy Rule 2002(e).  May 16, 2013 was fixed as the proof of claims bar date.  See docket entry #132.[4]

On February 4, 2013, the plaintiffs filed a Second Motion to Extend the deadlines under Rules 4004(a) and 4007(c) to April 1, 2013.  In addition to repeating many of the same allegations in their first motion concerning a lack of information about the debtor's financial condition and prepetition transactions, and that "information has come to light in the two initial sessions of the Meeting of Creditors which might support an action that the Debtor is not entitled to a discharge," see docket entry #127 (Second Motion for Extension, ¶ 20), the plaintiffs also averred that a scheduled January 29, 2013 examination of the debtor under Rule 2004 had not occurred owing to "an apparent miscommunication" between counsel.[5]  See Second Motion to Extend, ¶ 13.  Moreover, plaintiffs asserted that they were still seeking additional documentation regarding the debtor's sale of his interest in an entity known as Abcon Construction, which information they considered "more important[]" to their decision whether to object to the debtor's discharge.  See Second Motion to Extend, ¶¶ 14-18.

Again, the debtor opposed this second motion.  He alleged that plaintiffs' counsel bore responsibility for the 2004 examination not having taken place, that he had provided to the trustee and plaintiffs all documents that had been requested regarding

---

[4]It appears that the chapter 7 trustee will attempt to liquidate the debtor's interest in Aloia Construction Inc.  On March 5, 2013, he filed a motion to sell that interest under section 363(b) for $40,000.  See docket entry #139.  The debtor and counsel for Aloia Construction filed objections, see docket entries ##145, 146, with the latter suggesting that the proposed price was not at fair value.  The trustee withdrew his sale motion.  See docket entry #148.

[5]The debtor appeared at plaintiffs' counsel's office for his 2004 examination on January 29th, but plaintiff's counsel believed the examination had been rescheduled for February 1st.  See Second Motion to Extend, ¶ 13.

Abcon Construction, that the trustee was satisfied that the debtor was entitled to a bankruptcy discharge, and that the plaintiffs were improperly seeking to delay the debtor's fresh start.  See docket entry #130.

On February 14, 2013, Mr. Aloia filed a second amended Schedule C, changing the amount of his claimed exemption of corporate stock to $11,791.27 and valuing his interest in that asset at $30,000.  See docket entry #134.  The five corporate collection actions listed on this bankruptcy schedule remained unchanged.

March 6, 2013 was the date set for the hearing to determine the plaintiffs' second motion for an extension under Rule 4004(b)(1).  Neither plaintiffs nor their attorney appeared at the scheduled hearing.  By order dated March 6th, I granted the debtor's oral request to dismiss the second motion for lack of prosecution.  See docket entry #142.

Also on March 6, 2013, the plaintiffs filed the above-captioned three-count complaint objecting to the discharge of the debtor, pursuant to section 727(a)(2)(A), (a)(4) (Count III) as well as objecting to the dischargeability of an alleged obligation owed to Diamond Tool, pursuant to section 523(a)(2)(A), (a)(6) (Counts I and II).  In Count III, the plaintiff[6] averred in part:

> Plaintiff believes and therefore [avers] that Defendant failed to list all of his assets on his schedules.

> Plaintiff believes and therefore [avers] that Defendant lied under oath when filing his schedules, testifying at the Section 341 Meeting of creditors and in subsequent filings.

---

[6]Count I expressly refers to Diamond Tool only.  Count II uses the singular term "plaintiff," while Count III refers to the plural "plaintiffs" in its heading, but then makes averments on behalf of just one plaintiff.

10

March 5th Complaint, ¶¶ 23, 25.[7]

In response, on March 21 the debtor filed his instant motion to dismiss, contending that the plaintiffs' complaint sought relief beyond the deadlines set by Rules 4004(a) and 4007(c) as well as the court-granted February 4th extension.  In reply to the debtor's motion to dismiss their adversary proceeding, the plaintiffs filed the instant third motion for an extension to object to the debtor's discharge on April 19, 2013, relying upon Bankruptcy Rule 4004(b)(2).  See docket entry #150.  They relied upon this third motion in their response to the debtor's request for dismissal.

As the plaintiffs' third motion for an extension under Rule 4004(b)(2) relates only to a possible objection to the debtor's chapter 7 discharge, on April 22, 2013, I granted the debtor's motion to dismiss the nondischargeability Counts I and II of the plaintiffs' complaint as untimely filed.  See, e.g., In re Dickinson, 242 F.3d 388 (table), 2000 WL 1761065 (10th Cir. Nov. 29, 2000).  I postponed a determination of the debtor's request to dismiss Count III pending resolution of the plaintiffs' third motion for an extension.  If the motion for an extension is denied then Count III also will be dismissed as untimely filed.  See In re Costa, 471 B.R. 768 (Bankr. D. Mass. 2012); In re Gonzalez, 2009 WL 2898871 (Bankr. D.P.R. Mar. 18, 2009).

An evidentiary hearing was held to consider the plaintiffs' motion under Rule 4004(b)(2).  The parties offered testimony that an individual associated with 421 Chestnut Partners, L.P., who also had been present and had examined the debtor on November 13, 2012, see ex. J-2, received unsolicited information in early March

---

[7]The plaintiffs did not specify the assets they believed the debtor failed to disclose on his schedules, or the false oaths he made, as averred in Count III of their complaint.

2013—but after the plaintiffs filed the above-captioned adversary proceeding in this court—from a creditor of the debtor acting pro se. Among the information sent to 421 Chestnut Partners concerned litigation involving Aloia Construction taking place in New York. The individual at 421 Chestnut Partners then communicated this information to plaintiffs' counsel.

In March 2013, the plaintiffs learned that Aloia Construction had filed a prepetition civil action in New York state court, asserting that an attorney engaged by the corporation was negligent in failing to file timely a mechanics lien in favor of the corporation. This state court action, still pending, has been stayed because the insurer of the defendant/attorney filed a civil action in federal district court seeking a declaratory judgment disclaiming coverage. This second action is captioned Admiral Insurance Co. v. Adges, et. al, 1811-cv-08289 (S.D.N.Y.). Exs. J-3, J-4.

The debtor did not include this malpractice litigation or the declaratory judgment action among the pending corporation lawsuits in his bankruptcy schedules.

The plaintiffs now contend that the declaratory judgment action has been settled, with the insurer agreeing to pay Aloia Construction $225,000. The debtor disagrees. The evidence presented on this point consisted of two exhibits.

First, by letter dated April 9, 2013, counsel for Aloia Construction opined to the district court his view of the status of the insurer's declaratory judgment action. Counsel wrote that his corporate client had settled the declaratory judgment action with the insurance carrier, Admiral Insurance Company, for $225,000, conditioned upon district court approval. Ex. J-3.

12

Second, by letter also dated April 9, 2013, counsel for Admiral Insurance wrote to the district court as to her view of the current status.  Ex. J-4.  Insurance counsel acknowledged that an agreement in principle had been reached with Aloia Construction, but thereafter the insurer learned certain facts that rendered any actual settlement conditioned upon a number of components beyond district court approval.  Id.

As outlined by counsel, the insurer would not agree to the settlement unless the district court would first grant a motion that insurance counsel believed would permit the insurer to settle the litigation without the insured's consent.  In addition, the insurer maintained that it had recently learned that a creditor of the corporation (not either of these plaintiffs, but through the same attorney that represents the two plaintiffs in this adversary proceeding) had, on March 18, 2013, served a writ of execution attempting to garnish funds owed to the corporation by the insurer.  Furthermore, on March 25, 2013, the insurer had become aware that various parties had filed UCC Financing Statements purporting to reflect security interests in any funds owed by the insurer to Aloia Construction.  The insurer had also recently discovered that Mr. Aloia had a pending chapter 7 bankruptcy case.  Id.

Insurance counsel asserted in her April 9th letter to the court that her client would not agree to any settlement until either there was a judicial resolution determining the proper party to whom the settlement funds should be paid, or an order permitting the insurer to interplead the settlement funds.  Id.

Finally, counsel for Admiral Insurance maintained that her client had incurred (unspecified) additional counsel fees based upon these recently discovered

13

events and information and intended to offset those additional fees from the settlement amount previously discussed.  Id.

No evidence was presented as to the current status of the federal declaratory judgment litigation; nor what action, if any, the district court took after receiving the two April 9th status letters.

Insofar as the claims of the two plaintiffs against the debtor are concerned, there is no dispute that Diamond Tool and Fasteners obtained a prepetition judgment against the debtor and Aloia Construction.  See docket entry #1 (Statement of Financial Affairs, #4; Bankruptcy Schedule D).  The lien against property of the debtor arising from the judgment held by Diamond Tool was avoided pursuant to 11 U.S.C. § 522(f) by order entered by default on January 9, 2013.  See docket entry #113.  Thereafter, Diamond Tool failed to file a proof of claim, and the claims bar date of May 16, 2013 has passed.

Uncontradicted testimony was presented that Aloia Construction was awarded $83,000 in arbitration against 421 Chestnut Partners, LP.  No evidence was presented that this latter entity holds a claim against the debtor that has not been resolved by this arbitration award.


II.


In opposing the plaintiffs' motion to further extend the deadline for objecting to his discharge, the debtor argues that neither Diamond Tool nor 421 Chestnut Partners has standing to seek such an extension.  As to the latter plaintiff only, I agree.

14

Article III courts may only hear "cases" and "controversies."  Const., Art.

III, § 2.  The requirement the every party have standing to assert claims grows out of this

mandate.  Davis v. Federal Election Committee, 554 U.S. 724, 733 (2008).  This

requirement also applies to Article I bankruptcy courts, as they are units of Article III

district courts.  See, e.g., In re Global Industrial Technologies, Inc., 645 F.3d 201, 210 (3d

Cir. 2011); In re Weaver, 632 F.2d 461, 462 n. 6 (5th Cir. 1980); see also Fred Reuping

Leather Co. v. Fort Greene National Bank of Brooklyn, 102 F.2d 372 (3d Cir. 1939).  As

the Third Circuit has instructed when addressing the issue of standing in bankruptcy

cases, a party must demonstrate:

> an "injury in fact" that is "concrete," "distinct and palpable,"
> and "actual or imminent."  Whitmore v. Arkansas, 495 U.S.
> 149, 155, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990).
> Additionally, the party must establish that the injury "fairly
> can be traced to the challenged action and is likely to be
> redressed by a favorable decision."  Id. (internal quotations
> omitted).

In re Global Industrial Technologies, Inc., 645 F.3d at 210; see generally Lujan v.

Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

"[T]he standing inquiry remains focused on whether the party invoking

jurisdiction had the requisite stake in the outcome when the suit was filed."  Davis v.

Federal Election Committee, 554 U.S. at 734.  Although a case or controversy may exist

at the time the litigation is commenced, it must continue at every stage of a proceeding:

> That restriction requires that the party invoking federal
> jurisdiction have standing—the "personal interest that must
> exist at the commencement of the litigation."  Friends of
> Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,
> 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)
> (internal quotation marks omitted).  But it is not enough that
> the requisite interest exist at the outset.  "To qualify as a case
> fit for federal-court adjudication, 'an actual controversy must

15

be extant at all stages of review, not merely at the time the
complaint is filed.'"  Arizonans for Official English v.
Arizona, 520 U.S. 43, 67 (1997)).

Davis v. Federal Election Committee, 554 U.S. at 732-33; see, e.g., Chamber of

Commerce of U.S. v. E.P.A., 642 F.3d 192, 199 (D.C. Cir. 2011).

      The doctrine of mootness "has been described as 'the doctrine of standing

set in a time frame: The requisite personal interest that must exist at the commencement

of litigation (standing) must continue throughout its existence (mootness).'"  Arizonans

for Official English v. Arizona, 520 U.S. 43, 68, n. 22 (1997) (quoting United States

Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980), which quoted Monaghan,

Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)).  "In

sum, the mooting of a case can occur in one of two ways.  It may occur because the legal

issue in dispute is no longer amenable to review and judicial relief would serve no

purpose, or it may occur because a party no longer has a personal stake in the controversy

and has, in essence, been divested of standing."  15 Moore's Federal Practice - Civil §

101.90 (2012).

      According to the evidence presented, at the time of the hearing on the

plaintiffs' current motion under Rule 4004(b)(2), 421 Chestnut Partners is only a debtor

of Aloia Construction and has no claim against Mr. Aloia, the debtor in this chapter 7

case.  Thus, its rights would be unaffected whether the instant motion to extend the

deadline for objecting to discharge were granted and whether the debtor receives a

chapter 7 discharge.

      There was no evidence presented regarding the date the arbitration award

against 421 Chestnut Partners was entered.  If I assume that the debtor is liable for all

debts of Aloia Construction (as he suggested at the meeting of creditors), and if the

arbitration award in favor of Aloia Construction was entered prior to the debtor's

bankruptcy filing, this plaintiff was never a creditor in this case and has no standing to

contest the debtor's discharge.  If the award occurred after this bankruptcy case

commenced, then 421 Chestnut Partners would have been a creditor holding a disputed

claim, see 11 U.S.C. § 101(5), (10), but any challenge it might make to the debtor's

discharge would now be moot.  In either instance, 421 Chestnut Partners has no right to

seek relief under Rule 4004(b)(2).

Conversely, it is undisputed the Diamond Tool is a creditor of the debtor, as

it holds a prepetition judgment.  See generally 11 U.S.C. § 101(10).  Any lien arising

under state law from that judgment has been avoided under section 522(f), and thus

Diamond Tool is an unsecured creditor.  See generally In re Ketchum, 2013 WL 3479652,

at *5 (Bankr. N.D. Ohio 2013).

I shall assume that the debtor is correct in that the failure of this plaintiff to

file a proof of claim, as directed by Federal Rule of Bankruptcy Procedure 3002(c)(3),

results in its claim not being allowed under 11 U.S.C. § 502.  See generally In re Toronto,

165 B.R. 746, 752 n.4 (Bankr. D. Conn. 1994).  Nonetheless, disallowance of a claim

owing to a creditor's failure to file a timely proof of claim does not negate the claim

itself.  It simply means that the creditor may be unable to receive a distribution from the

chapter 7 trustee under 11 U.S.C. § 726.  See generally, e.g., Hawxhurst v. Pettibone

Corp., 40 F.3d 175, 179-80 (7th Cir. 1994); In re Grynberg, 986 F.2d 367, 370-71 (10th

Cir. 1993).  Thus, if the trustee in this case liquidates non-exempt assets, he may not

tender any distribution to Diamond Tool.

17

Distinct, however, from the concept of allowance of a claim for distribution purposes, is the effect of a chapter 7 discharge on Diamond Tool's prepetition claim.  If Mr. Aloia were granted a chapter 7 discharge, then Diamond Tool would be enjoined under 11 U.S.C. § 524(a) from any collection effort on its claim.  See, e.g., Matter of Edgeworth, 993 F.2d 51, 53 (5th Cir. 1993) ("To ensure that a discharge will be completely effective, it operates as an injunction against enforcement of a judgment or the commencement or continuation of an action in other courts to collect or recover a debt as a personal liability of the debtor. . . . A discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt.") (citation omitted).  If, however, the debtor's discharge were denied, then no statutory injunction under section 524(a) would arise, and this plaintiff would be free to exercise its state law rights to recover its claim from non-exempt property.  See 11 U.S.C. § 522(c); cf. In re Ewiak, 75 B.R. 211 (Bankr. W.D. Pa. 1987) (a creditor whose judgment lien has been avoided under section 522(f), but whose claim is nondischargeable, may seek to recover from non-exempt property after the debtor's discharge is entered and the case is closed).

Accordingly, the entry of a discharge in favor of the debtor would adversely affect the rights of Diamond Tool as a creditor of the debtor, and so it has standing to seek an extension of time to object to the debtor's discharge.  See, e.g., In re Sullivan, 455 B.R. 829, 835-36 (B.A.P. 1st Cir. 2011):

> Section 727(c) provides the basis for standing to object to discharge.  Generally, the trustee, a creditor, or the United States Trustee may object to the debtor's discharge or the dischargeability of certain debts.  See 11 U.S.C. § 727(c)(1); see also Fed. R. Bankr. P. 4007(a).  Thus, whether Lussier has standing here turns on whether Lussier is a "creditor."  A creditor is any "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning

18

the debtor." 11 U.S.C. § 101(10). A claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5).

*** 

 Moreover, bankruptcy courts have recognized that claims need not be allowed in order to establish a party as a "creditor" under § 727(c)(1). In the Eighth Circuit, the B.A.P. has held that where the debtor listed the Internal Revenue Service (the "IRS") as a creditor, the IRS held a claim qualifying it as a creditor with standing to object to discharge under § 727, even if the claim was ultimately disputed, reduced, or disallowed. Korte v. United States (In re Korte), 262 B.R. 464, 471 (8th Cir. BAP 2001). Similarly a Michigan bankruptcy court, for two main reasons, rejected the debtor's argument that the chapter 7 trustee was not a creditor with standing to object to discharge.

> First, nothing in § 727(c) limits standing to object to the discharge to creditors whose claims are first allowed in the bankruptcy case. . . . If Congress intended to limit standing to only those creditors with allowed claims, it could easily have crafted the statutory language to reflect that intent. Thus, as demonstrated in the text, even a party with a disputed claim is a "creditor." Second, when there are no assets available for distribution, as in most chapter 7 cases, even the filing of claims by creditors, let alone actually litigating such claims, is strongly discouraged. See [Bankruptcy Rules] 2002(e) and 3002(c)(5).

Solomon v. Barman (In re Barman), 244 B.R. 896, 899 n. 3 (Bankr. E.D. Mich. 2000).

Therefore, based upon the applicable sections of the Bankruptcy Code, the undisputed facts, and the explicit language of In re Korte and In re Barman, the Panel recognizes Lussier as a creditor with standing to object to discharge under § 727(c)(1).

See also In re Hunn, 49 B.R. 430, 431 (Bankr. M.D. Fla. 1985):

While Bankruptcy Rule 3002(a) clearly requires a proof of
claim to be filed in order for the claim to be allowed for
purposes of the claimant sharing in distribution in the estate,
there is no suggestion in the statutes or the rules that a claim
ceases to exist if not supported by a timely proof of claim.
Title 11, U.S.C. § 101(9)(A) defines a creditor simply as an
entity that has a claim against the debtor that arose at the time
of or before the Order for Relief concerning the debtor.  There
is no reference to schedules or proofs of claim.  There does
not seem to be any equitable reason to bar this plaintiff from
pursuing an action under § 727(a) on standing grounds.

Accordingly, as one of the plaintiffs has standing to seek an extension, I

must consider whether it is entitled to relief under Bankruptcy Rule 4004(b)(2).[8]


## III.


While section 727(c) provides that a bankruptcy trustee, creditor, or United

States trustee may object to the grant of a bankruptcy discharge, Bankruptcy Rule 4004

fixes the deadline for raising such an objection.  Rule 4004(a) sets that deadline at 60

days from the date first set for the meeting of creditors under section 341 and Rule

2003(a).  As observed by one court, this deadline was intended to balance various

interests:

The 60-day deadlines in the Rules strike a balance between
the competing interest of the debtors who want a fresh start,
the creditors who would like to receive payment of their
claims, and the U.S. Trustee who is charged with the duty to
protect the bankruptcy system from abusive filings.  The

---

[8]Indeed, if the debtor's standing argument were correct, then in a chapter 7 case
classified as a no-asset case—meaning that there are no non-exempt assets available for
distribution to creditors—a creditor could only object to discharge if it ignored the court notice
sent under Bankruptcy Rule 2002(e) that the filing of a proof of claim is unnecessary.

> relatively brief deadlines for objections relating to chapter 7
> relief are there to encourage expeditious administration of the
> case.  The short deadlines "give debtors some degree of
> certainty in the process of obtaining a discharge."  In re
> Chamness, 312 B.R. 421, 423 (Bankr. D. Colo. 2004).  "A
> Chapter 7 bankruptcy discharge entitles a debtor to a 'fresh
> start,' therefore, the debtor has an interest in the prompt
> resolution of all discharge issues."  In re Davis, 195 B.R. 422,
> 424 (Bankr. W.D. Mo. 1996) (citation omitted).

In re Bomarito, 448 B.R. 242, 251 (Bankr. E.D. Cal. 2011) (footnote omitted).

Bankruptcy Rule 4004(b)(1) provides some relief to potential objectors from the Rule 4004(a) deadline, but only if an extension is requested prior to the expiration of the 60-day deadline, and only if cause is demonstrated.  See, e.g., Kontrick v. Ryan, 540 U.S. 443, 448 (2004). "With no timely request for an extension of time to file a complaint objecting to discharge under Rule 4004(b), the Court has neither discretion nor authority under Rule 9006(b)(3) to enlarge the time to file that complaint." In re MacKay, 253 Fed. Appx. 244, 246 (3d Cir. 2007) (non-precedential); In re Anthanassious, 418 Fed. Appx. 91, 96 (3d Cir. 2011) (non-precedential).

When seeking relief under Rule 4004(b)(1), it is the burden of the moving party to demonstrate that cause exists.  See, e.g., In re Marsh, 2012 WL 482581, at *2 (Bankr. D. Mont. Sept. 26, 2012).  Whether that burden is met falls within the discretion of the bankruptcy court.  See, e.g., In re Anthanassious, 418 Fed. Appx. at 97; In re Boltz-Rubinstein, 454 B.R. 614, 620 (Bankr. E.D. Pa. 2011).  Moreover, while courts may differ on the precise standard to use when determining cause under Rule 4004(b)(1), they agree on requiring proof of diligence from the movant in investigating the debtor's financial affairs prior to granting an extension.  See In re Paige, 476 B.R. 867, 872 (Bankr. M.D. Pa. 2012) (citing consensus that no cause exists where lack of diligence and

no reason for delay in investigation); In re Marsh, 2012 WL 4482581, at *3 (denying

extension request where trustee did not offer any evidence of her due diligence); In re

Chatkhan, 455 B.R. 365 (Bankr. E.D.N.Y. 2011) (denying motion where no showing that

the creditor sought any form of discovery or that debtor failed to cooperate with creditor);

In re Bomarito, 448 B.R. at 250-51 (denying U.S. Trustee's extension request where an

objection to discharge would be based on information that was available in debtor's initial

filings).

　　　　After the objection deadline has passed, section 727(d) provides additional

relief in the form of revocation of a bankruptcy discharge already granted, so long as the

request for revocation is made within the deadlines provided by section 727(e).  See

generally In re Poff, 344 Fed. Appx. 523 (11th Cir. 2009); In re Martin, 96 Fed. Appx. 62,

65 (3d Cir. 2004) (non-precedential).  One basis for obtaining revocation of a previously

granted discharge is found in section 727(d)(1):

> (d) On request of the trustee, a creditor, or the United States
> trustee, and after notice and a hearing, the court shall revoke a
> discharge granted under subsection (a) of this section if–
>
> > (1) such discharge was obtained through the
> > fraud of the debtor, and the requesting party did
> > not know of such fraud until after the granting
> > of such discharge[.]

　　　　By its express terms, revocation of a discharge under section 727(d)(1) for

fraud is limited to circumstances in which the party seeking such relief learns of the fraud

after the discharge has been entered.  Implicit in the application of section 727(d)(1) is

that "a creditor or trustee [seeking revocation] is required to have exercised diligence in

investigating the facts during the case, especially after having been put on notice of

possible fraud." 6 <u>Collier on Bankruptcy</u>, ¶ 727.17[3] (16th ed. 2012).  As explained

recently by one court:

> The burden to obtain information relating to fraud remains on
> the creditors, who must investigate the bankrupt's affairs
> before discharge. . . .  The bankruptcy judge noted that the
> majority of courts have concluded that a creditor cannot bring
> a successful § 727(d)(1) revocation action if the creditor had
> any information or knew of any facts that would have put him
> on notice of possible fraud. . . .  The bankruptcy court rejected
> the Appellants' argument (which they also make now on
> appeal) that § 727(d)(1) requires a more complete knowledge
> of the fraud, and held that notice of the fraud is sufficient.
>
> Knowledge of facts that would ordinarily put a reasonable
> person on notice of the alleged fraud precludes revocation
> under § 727(d)(1). . . .  Creditors who have only a suspicion
> that a debtor has committed fraud have remedies available to
> them: they may petition the bankruptcy court for an extension
> of time in which to file objections . . . or they may ask for
> additional time in which to conduct discovery. . . .

<u>Smith v. Seferian</u>, 2011 WL 6753989, at *3 (N.D. Ill. Dec. 21 ,2011) (citations omitted);

<u>see</u>, <u>e.g.</u>, <u>Mid-Tech Consulting, Inc. v. Swendra</u>, 938 F.2d 885, 888 (8th Cir. 1991) ("We

agree with the . . . majority of the courts that have addressed this issue, and hold that

dismissal of a § 727(d)(1) revocation action is proper where, before discharge, the

creditor knows facts such that he or she is put on notice of a possible fraud. . . .  Thus, the

burden is on the creditor to investigate diligently any possibly fraudulent conduct before

discharge.") (citations omitted); <u>In re Bors</u>, 2012 WL 6575171, at *10 (B.A.P. 9th Cir.

Dec. 17, 2012); <u>In re Rohe</u>, 458 B.R. 539, 543 (Bankr. E.D. Mo. 2011).

Before the enactment of  Bankruptcy Rule 4004(b)(2), when a creditor had

first learned of the debtor's fraud after the deadline for an objection to discharge under

Rule 4004(a) had passed, but before any bankruptcy discharge had been granted—during

the so-called "gap period"—some courts held that the creditor was unable to seek any

relief in opposing the debtor's discharge.  See, e.g., Zedan v. Habash, 529 F.3d 398 (7th Cir. 2008).  They reasoned that because the Rule 4004(a) deadline had elapsed prior to the gap period, any complaint objecting to discharge would be untimely and subject to dismissal. They also found that relief under section 727(d) could only be sought after a discharge had been entered; thereby precluding revocation during the gap period, since a bankruptcy discharge had yet not been issued.  Moreover, if a creditor did not request relief during the gap period and waited until the discharge had been entered to seek its revocation, the creditor's knowledge of the fraud obtained during the gap period would preclude any relief, given the language of section 727(d)(1).  Id., 529 F.3d 404-06.

Other courts, relying upon Rule 4004(c)—which directs that if a debtor is entitled to a chapter 7 discharge, such discharge be entered "forthwith" after the expiration of the Rule 4004(a) deadline (unless, inter alia, a motion to extend under Rule 4004(b) is pending)—concluded that Congress did not anticipate that any gap period would exist in enacting section 727(d).  Reasoning that the entry of a bankruptcy discharge should relate back to the date of the Rule 4004(a) deadline, thereby eliminating any gap period, these courts construed section 727(d)(1) to permit a "diligent creditor" who first learns of fraud during the gap period to obtain revocation of the debtor's discharge.  See, e.g., In re Emery, 132 F.3d 892, 896 (2d Cir. 1998) ("We agree that the literal application of § 727(d) here cannot have been intended by Congress and the Supreme Court [when enacting Rule 4004]. . . .  Nothing in the Bankruptcy Code itself indicates an intention to create immunity during a gap period.  Sections 727(c) and 727(d), taken together, clearly contemplate that diligent creditors will have a remedy against fraudulent debtors.") (citations omitted).

24

In 2011, Bankruptcy Rule 4004(b) was amended to clarify that creditors who first learn of the debtor's fraud during the gap period can obtain relief. See generally In re Taylor, 449 B.R. 686, 691 (Bankr. E.D. Pa. 2011).  Rule 4004(b) now provides:

> (1) On motion of any party in interest, after notice and hearing, the court may for cause extend the time to object to discharge. Except as provided in subdivision (b)(2), the motion shall be filed before the time has expired.
>
> (2) A motion to extend the time to object to discharge may be filed after the time for objection has expired and before discharge is granted if (A) the objection is based on facts that, if learned after the discharge, would provide a basis for revocation under § 727(d) of the Code, and (B) the movant did not have knowledge of those facts in time to permit an objection.  The motion shall be filed promptly after the movant discovers the facts on which the objection is based.

(emphasis added).  The Advisory Committee Note (2011) to this amendment makes clear that the drafters intended to provide creditors with an opportunity to oppose the debtor's discharge by extending the deadline for an objection, so long as knowledge of the debtor's fraud first surfaced during the gap period.[9]

---

[9]The Advisory Committee Note (2011) states:

> Subdivision (b) is amended to allow a party, under certain specified circumstances, to seek an extension of time to object to discharge after the time for filing has expired.  This amendment addresses the situation in which there is a gap between the expiration of the time for objecting to discharge and the entry of the discharge order.  If, during that period, a party discovers facts that would provide grounds for revocation of discharge, it may not be able to seek revocation under § 727(d) of the Code because the facts would have been known prior to the granting of the discharge.  Furthermore, during that period the debtor may commit an act that provides a basis for both denial and revocation of the discharge.  In those situations, subdivision (b)(2) allows a party to file a motion for an extension of time to object to discharge based on those facts so long as they were not known to the party before expiration of

(continued...)

IV.


A.


In support of its third motion to extend the deadline for objecting to the

debtor's discharge, Diamond Tool avers as follows:

> Subsequent to the filing of the Adversary Action, Plaintiffs'
> counsel learned of the existence of a malpractice case against
> a former attorney, Adges, which had been filed on behalf of
> Aloia Construction Company, Inc., ("ACC") a business
> whose shares are wholly owned by Debtor.

> At that time, Plaintiff's counsel learned that a settlement had
> been reached in a related Declaratory action in which ACC
> would receive Two Hundred Twenty Five Thousand Dollars
> ($225,000.00).  This settlement has not yet been paid to ACC.

> In three versions of Debtor's Schedule B, Debtor sets forth
> claims which ACC is pursuing.  None of these filings
> contained information about the Adges malpractice claim,
> noted that it had been settled for $225,000 in the same month
> that the Chapter 7 case was filed, or that the settlement had
> not been received by ACC. . . .

> The existence of and settlement of the malpractice case were
> not disclosed by Debtor at two Section 341 Meeting[s] of
> Creditors, or in response to the Chapter 7 Trustee's direction
> that Debtor provide full information concerning ACC's
> pending claims.

> Debtor intentionally mislead and likely committed perjury
> concerning this claim at the November 13, 2012 Section 341
> meeting.  As is set forth in the attached transcript, he
> indicated that there was a potential claim for malpractice
> against an attorney in connection with a matter involving

---

[9](...continued)
the deadline for objecting.  The motion must be filed promptly
after discovery of those facts.

26

> Century Construction which had been dismissed due to a
> procedural error on [sic] by an attorney.  As can be seen from
> the attached Exhibit, there was an actual 2010 malpractice
> case against Adges which involved 800 Properties and the
> failure to file mechanic's liens, not Century Construction. . . .

Third Motion for Extension, ¶¶ 9-13.

Thus, Diamond Tool asserts that the debtor failed to disclose that Aloia Construction had a pending malpractice claim that had settled for $225,000.  Such failure, it argues, constitutes fraud, presumably under sections 727(a)(4) ("false oath") or 727(d)(1).[10]  Furthermore, as this plaintiff asserts that it only learned of these nondisclosures after the February 4, 2013 extended deadline had passed, and as the nondisclosures were material to the value of the debtor's interest in Aloia Construction, as well as intentional, and as no chapter 7 bankruptcy discharge has yet been entered in this case, Diamond Tool maintains that is entitled to have the discharge objection deadline extended under Rule 4004(b)(2).

The debtor counters in his post-hearing memorandum in relevant part:

> Movants are relying solely upon the absence of a specific
> reference to the Adger [sic] malpractice action under the
> description of Aloia Construction Company, Inc's assets on
> schedule B.  Debtor in turn argues:
>
> 1. It was discussed and answered to the extent of the inquiry
> at the 341 meetings.  If specific questions were asked, Debtor
> would have answered those questions, and;

---

[10]Since it is the debtor's interest in his corporation that is an asset of the bankruptcy estate, and as that interest was obtained long before the debtor's bankruptcy case commenced, section 727(d)(2) has no application to this dispute regardless of the date of the filing of the corporate malpractice action or of any actual settlement.  See, e.g., 4 Norton Bankr. L. & Prac. 3d § 86:23 (2013) ("The second ground for revocation, set out in Code § 727(d)(2), is generally applicable where estate property is acquired by the debtor after filing.").  Paragraphs 3 and 4 of section 727(d) are also inapplicable.

2. It was not settled and still remains unsettled and;

3. It is an asset of Aloia Construction Company, Inc and not the Debtor and is not required to be listed and;

4. The corporate debts still exceed the receivables including Adges and therefore the corporation has no value and;

5. The affect of Adges and its current status if anything may affect the trustee's valuation of the stock for sale, but has no affect on non-dischargeability.

Debtor answered all questions at the 341 meeting on October 3, 2012 and November 13, 2013 [sic] honestly based upon his knowledge at that time.  The malpractice action derives from the 800 properties receivable listed under Aloia Construction Company, Inc. on schedule B.  Debtor listed his ownership interest of Aloia Construction Company, Inc on schedule B. While the receivables are listed under Aloia Construction Company, Inc. description, it was solely to help the trustee value the stock.  They are not assets of Thomas Aloia, individually.

Debtor's Posthearing Memorandum, at 6-7 (unpaginated).

Thus, the debtor challenges Diamond Tool's contention that his failure to list in his bankruptcy schedules Aloia Construction's pending malpractice action against its former counsel (referred to as Adges) constitute frauds under section 727(a)(4) to warrant denial of discharge, or under section 727(d)(1) to warrant revocation of discharge.  Among other arguments, he asserts that the corporate malpractice action does not increase the value of his interest in the corporation, owing to the corporation's liabilities.[11]

---

[11]Sections 727(a)(4) and 727(d)(1) are related, in that a revocation of discharge under section 727(d)(1) can be obtained upon proof that the debtor committed a false oath under section 727(a)(4).  See, e.g., In re Bors, 2012 WL 6575171, at *9 (B.A.P. 9th Cir. Dec. 17, 2012); In re Smith, 489 B.R. 875, 891 (Bankr. M.D. Ga. 2013).  To prevail under section 727(a)(4), a creditor must demonstrate:

(continued...)

Moreover, the debtor also maintains that he responded honestly to questions posed to him at the November 13th meeting of creditors, which responses revealed to the trustee and to counsel for Diamond Tool the existence of a corporate malpractice cause of action. Thus, implicitly, the debtor argues that even if his nondisclosure of the corporate malpractice action on his bankruptcy schedules would justify relief under sections 727(a)(4) or 727(d)(1), Diamond Tool was not diligent in investigating this corporate claim prior to the expiration of the February 4th deadline for objecting to his discharge, and so is not entitled to any relief under Rule 4004(b)(2).

B.

In resolving the parties' dispute over the applicability of Rule 4004(b)(2) to these facts, I note that there are only two reported decisions applying this new procedural rule to determine whether an extension of the discharge objection deadline was justified. Both decisions include in their analysis whether the creditor seeking the extension was

---

[11](...continued)
(1) [the debtor] made a statement under oath; (2) the statement was false; (3) [the debtor] knew the statement was false; (4) [the debtor] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. False oaths sufficient to justify the denial of discharge include (1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at the examination during the course of the proceedings.

Matter of Beaubouef, 966 F.2d 174, 178 (5th Cir. 1992) (citations and quotations omitted).
        Mr. Aloia appears to contend that he never made any statements that were either false or material to the administration of his chapter 7 bankruptcy case.
        I need not address that contention to resolve this dispute.

29

diligent in investigating facts that may have disclosed the alleged fraud before the

expiration of the discharge deadline.

In In re Berger, 2012 WL 2254324 (Bankr. D.N.D. June 15, 2012), the

bankruptcy court denied a creditor relief under Rule 4004(b)(2) holding that cause for

such relief had not been demonstrated:

> Cause for an extension does not exist when a creditor, who
> has notice of the bankruptcy case and filing deadlines, fails to
> diligently pursue discovery prior to expiration of those
> deadlines.

Id., at *4 (citing In re Chatkhan, 455 B.R. 365 (Bankr. E.D.N.Y. 2011), which decision

had applied Rule 4004(b) prior to its amendment).  The bankruptcy court in In re Lusane,

2013 WL 1728990 (Bankr. D.D.C. Apr. 22, 2013), granted relief under Rule 4004(b)(2)

after concluding that the creditor had been diligent in investigating the debtor's affairs.

Id., at *3-*4.

I agree with both courts that implicit in Rule 4004(b)(2) is the requirement

that a party, seeking relief by asserting that it first learned of the debtor's fraud during the

gap period, demonstrate some degree of diligence in investigating the debtor's financial

affairs prior to the expiration of the deadline for objecting to discharge, especially when it

has reason to suspect possible fraud.  Also implicit is that relief under paragraph (b)(2), as

with paragraph (b)(1), see, e.g., In re Marsh, 2012 WL 4482581, at *3, is subject to court

discretion.

First, Bankruptcy Rule 4004(b)(1) expressly requires a demonstration of

"cause" for the grant of any extension.  As noted above, it has long been held that a

component of cause under Rule 4004(b)(1) is a showing of diligence.  Since Rule 4004(b)

in paragraph (1) provides that paragraph (2) was added solely as an exception to the

requirement that any motion for extension be filed prior to the expiration of the Rule 4004(a) deadline, relief under Rule 4004(b)(2) also requires a showing of cause, including diligence.

Second, also as discussed above, creditor diligence has long been a requirement for revocation relief under section 727(d)(1).  It is counterintuitive to conclude that a creditor seeking extension of the objection deadline prior to its expiration must demonstrate diligence, and a creditor seeking revocation for fraud after the bankruptcy discharge has been entered must also demonstrate diligence, but that a creditor seeking an extension during the gap period owing to the debtor's alleged fraud need not prove its diligence.

Finally, the Third Circuit Court of Appeals has instructed that congressional policy in favor of affording debtors a "fresh start" through a bankruptcy discharge requires that courts act sparingly before denying a discharge:

> Congress described § 727's discharge provision as "the heart of the fresh start provisions of the bankruptcy law."  H.R. Rep. No. 595, 95th Cong., 1st Sess. 384 (1977).  The section is to be construed liberally in favor of the debtor. . . . Completely denying a debtor his discharge, as opposed to avoiding a transfer or declining to discharge an individual debt pursuant to § 523, is an extreme step and should not be taken lightly.

Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993).  It is fully consistent with this congressional policy to require that a creditor, who moves for an extension of the objection deadline during the gap period under Rule 4004(b)(2), to have been diligent in its investigation of the debtor's financial affairs when it has reason to doubt the accuracy of the debtor's Bankruptcy Schedules or Statement of Financial Affairs.

C.

The evidence reflects that plaintiff Diamond Tool, through its counsel, attended both section 341 meetings and elicited testimony from the debtor about the assets of Aloia Corporation.  At the second meeting on November 13th it learned of a malpractice claim held by Aloia Corporation, which claim the debtor, a non-attorney, characterized as "potential."  Moreover, it also learned that this malpractice claim involved a construction project.  In addition, on November 13th, Diamond Tool became aware that the malpractice claim had not been listed on the debtor's Bankruptcy Schedule B, since the debtor testified that the "potential" claim arose from litigation that had been dismissed.

At the time Diamond Tool learned of the debtor's corporate malpractice claim, this plaintiff was among the petitioners who had filed an involuntary bankruptcy petition against the Aloia Corporation under section 303.  If an involuntary petition is contested, petitioners must prove that the debtor is generally not paying its debts as they come due.  11 U.S.C. § 303(h)(1).  "In determining whether a debtor is generally paying its debts as they become due, courts 'compare the number of debts unpaid each month to those paid, the amount of the delinquency, the materiality of the non-payment, and the nature of the [d]ebtor's conduct of its financial affairs.'"  General Trading Inc. v. Yale Materials Handling Corp.  119 F.3d 1485, 1504 n. 41 (11th Cir. 1997) (quoting In re Leek Corp., 52 B.R. 311, 314 (Bankr. M.D. Fla. 1985).  Furthermore, the filing of an involuntary petition in good faith requires some knowledge of the putative debtor's financial circumstances.  See generally In re Express Car & Truck Rental, Inc., 440 B.R.

422, 432 (Bankr. E.D. Pa. 2010) (discussing section 303(i)); In re Diloreto 388 B.R. 637,

650 (Bankr. E.D. Pa. 2008) (same), aff'd 442 B.R. 373 (E.D. Pa. 2010).

I will accept that whatever information Diamond Tool possessed regarding

the financial circumstances of Aloia Construction when the involuntary petition was filed

did not include any knowledge of a malpractice claim.  Diamond Tool, however, clearly

knew of this potential malpractice claim as of November 13, 2012; yet, it took no steps to

investigate its status or its value.  Its motion for an extension of time under Rule 4004(a),

filed on December 3rd, focused upon obtaining copies of documents provided to the

trustee by the debtor.  Those documents were identified by the trustee in his October 3rd

report, set forth above, and concerned the five collection actions listed by the debtor on

his Bankruptcy Schedule B, as well as the debtor's transfer of his interest in Abcon

Construction.  No information about the malpractice claim would be included in those

documents.

After its first extension motion was granted, Diamond Tool attempted no

discovery of the debtor other than to examine him under Rule 2004 just prior to the

February 4th deadline.  This examination did not occur owing to "miscommunication,"

and not because of the debtor's intransigence.  See In re Anthanassious 418 Fed. Appx.

91, 96-97.  Thereafter, Diamond Tool sought another extension (which it did not

prosecute) and that request did not refer to any intended inquiries regarding the

"potential" corporate malpractice claim.

In addition, on March 5, 2013, after the February 4th deadline had passed

and before Diamond Tool contends that it first learned of the corporate malpractice

action, it filed a complaint alleging that the debtor committed a false oath within the

33

meaning of section 727(a)(4), when he filed his schedule of assets and during his testimony at the meetings of creditors.  Therefore, this plaintiff appears to have held a good faith belief, <u>see</u> Federal Rule of Bankruptcy Procedure 9011(b), without any information first learned during the gap period, that the debtor had committed a fraud.

Finally, Diamond Tool learned of the pending corporate malpractice action and its possible resolution in March 2013 from an individual who is not an attorney and who is not a party to the litigation.  This suggests that information about the malpractice claim was easily available to those who chose to investigate.

Therefore, even if the debtor's failure to list the pending corporate malpractice action on his Bankruptcy Schedule B, and failure to disclose the potential settlement with the defendant's insurer, constitute frauds within the meaning of section 727(d)(1), I conclude that Diamond Tool has not established cause to extend the time to object to discharge under Bankruptcy Rule 4004(b)(2).

Diamond Tool was long aware that the debtor's interest in Aloia Construction was an asset of his bankruptcy estate.  Nonetheless, after learning of a malpractice claim in November 2012, and knowing that any such claim was not included in the debtor's list of corporate assets provided to the trustee, Diamond Tool elected not to investigate this claim, learning its status only by the unsolicited communication from another creditor who had undertaken her own investigation without the benefit of counsel. Seemingly suspicious of Mr. Aloia from the start, Diamond Tool chose to focus its inquiries upon the five corporate civil actions mentioned in the debtor's bankruptcy schedules and the debtor's transfer of his interest in Abson Construction, rather than upon any malpractice claim.

34

In addition, the debtor's multiple schedule revisions and answers at the 341 meetings should have alerted a diligent, suspicious creditor, that it could not rely on the debtor's voluntary disclosures or upon the trustee's document demands to determine whether the debtor's value of his interest in Aloia Construction was accurate.

Moreover, even without the knowledge it later obtained about the corporate malpractice action, and even without any 2004 examination of the debtor, Diamond Tool had reached the conclusion that the debtor committed a false oath within the meaning of section 727(a)(4) and was not entitled to a discharge.  It has provided no explanation for its failure to file its objection to discharge prior to the expiration of the deadline, which had been extended to February 4, 2013.

Accordingly, for these reasons I will deny Diamond Tool's and 421 Chestnut Partners' third motion for an extension of the deadline to object to discharge.  In addition, as the March 5th complaint has now been found to be untimely, I will also grant the debtor's motion to dismiss the remaining count of the pending adversary proceeding.

Appropriate orders will be entered.


_____
        BRUCE FOX
United States Bankruptcy Judge

Dated: July 17, 2013